**IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF DELAWARE**

IN RE:

| | |
|---|---|
| Innovative Communication Company, LLC<br>　　Involuntary Debtor | Bankruptcy No. 06-10133-JKF<br>Chapter 11 |
| | **Related to Dkt. No. 6, Motion to Transfer Venue to the U.S. District Court for the Virgin Islands filed by Alleged Debtor;** |
| | **Dkt. No. 154, Motion to Approve Petitioning Creditors' Order to Determine Proper Venue of Debtors' Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities[1]** |
| Emerging Communications, Inc.<br>　　Involuntary Debtor | Bankruptcy No. 06-10134-JKF<br>Chapter 11 |
| | **Related to Dkt. No. 9, Motion to Transfer Venue to the U.S. District Court for the Virgin Islands Pursuant to 28 U.S.C. §1412 filed by Alleged Debtor;** |
| | **Dkt. No. 152, Motion to Approve Order Determining Proper Venue of Debtors' Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities** |

---

[1]The Greenlight Entities are defined as Greenlight Capital L.P., Greenlight Capital Offshore, Ltd., Greenlight Capital Qualified L.P. In the motion to transfer venue filed in the Delaware involuntaries these entities are referred to as the Greenlight Hedge Funds.

1

| | |
|---|---|
| Jeffrey J. Prosser<br>    Involuntary Debtor | Bankruptcy No. 06-10135-JKF<br>Chapter 11 |
| | **Related to Dkt. No. 6, Emergency Motion to Transfer Venue to the United States District Court for the Virgin Islands Pursuant to 28 U.S.C. §1412 filed by Alleged Debtor;** |
| | **Dkt. No. 111, Motion to Approve Motion of Petitioning Creditors for Order to Determine Proper Venue of Debtors' Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities** |

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF THE VIRGIN ISLANDS – BANKRUPTCY DIVISION**

IN RE:

| | |
|---|---|
| Innovative Communication<br>Company, LLC<br>    Debtor | Bankruptcy No. 06-30008-JKF<br>Chapter 11 |
| | **Related to Dkt. No. 4, Motion of Petitioning Creditors for Order to Determine Proper Venue of Debtors Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities** |
| Emerging Communications, Inc.<br>    Debtor | Bankruptcy No. 06-30007-JKF<br>Chapter 11 |
| | **Related to Dkt. No. 4, Motion of Petitioning Creditors for Order to Determine Proper Venue of Debtors Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities** |

2

| | |
|---|---|
| Jeffrey J. Prosser | Bankruptcy No. 06-30009-JKF |
| Debtor | Chapter 11 |
| | **Related to Dkt. No. 8, Motion of Petitioning Creditors for Order to Determine Proper Venue of Debtors Voluntary Chapter 11 Cases Pursuant to Debtors' Venue Motions and Bankruptcy Rule 1014(b) filed by the Greenlight Entities** |

Appearances:

**For the District of Delaware**:

    **Innovative Communication Company, LLC** – Carol A. Rich, Esquire, Douglas P. Bartner, Esquire, and Robert E. Nies, Esquire, for Alleged Debtor; Gregg M. Galardi, Esquire, for the Greenlight Entities; Toby L. Gerber, Esquire, for Rural Telephone Finance Cooperative; Robert F. Craig, Esquire, for Jeffrey J. Prosser;

    **Emerging Communications, Inc.** – Daniel J. DeFranceschi, Esquire, and Douglas P. Bartner, Esquire, for Alleged Debtor; Gregg M. Galardi, Esquire, and William R. Greendyke, Esquire, for the Greenlight Entities; Toby L. Gerber, Esquire, and William R. Greendyke, Esquire, for Rural Telephone Finance Cooperative; Lisa C. McLaughlin, Esquire, and Robert F. Craig, Esquire, for Jeffrey J. Prosser;

    **Jeffrey J. Prosser** – Jenna B. Taub, Esquire, Lisa C. McLaughlin, Esquire, Robert F. Craig, Esquire, and Michael J. Lichtenstein, Esquire, for the Alleged Debtor; Gregg M. Galardi, Esquire, for the Greenlight Entities; Toby L. Gerber, Esquire, for Rural Telephone Finance Cooperative

**For the District of the Virgin Islands** – same counsel

## MEMORANDUM OPINION[2]

Before the court are various motions to determine whether venue of these cases should be in the Bankruptcy Court for the District of Delaware or in the District Court for the Virgin

---

[2] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

3

Islands, Bankruptcy Division ("USVI"). Involuntary chapter 11 cases were filed against Innovative, Emerging and Prosser[3] in Delaware on February 10, 2006. Thereafter, on July 31, 2006, Innovative, Emerging and Prosser filed voluntary chapter 11 cases in the USVI. In the Delaware involuntaries, Debtors filed motions to transfer venue to the USVI. The petitioning creditors and the Rural Telephone Finance Cooperative ("RTFC"), a secured creditor, oppose a transfer[4] and assert that venue is appropriate in Delaware.

Background

The procedural history and relationships of these cases is complex but relevant to the venue motion. The Virgin Islands Telephone Corporation ("Vitelco"), a nondebtor, is an indirect subsidiary of Debtor Innovative Communication Company, LLC ("ICC-LLC") and is indirectly owned by Emerging. ICC-LLC is a holding company that owns approximately 51

---

[3]Prosser is the chairman of the board, CEO and president of ICC-LLC. It is alleged by the RTFC that he is also the chairman, CEO and president of most if not all of ICC-LLC's direct and indirect subsidiaries.

[4]RTFC asserts that a motion to transfer venue cannot be brought in an involuntary case until the putative debtor is adjudicated. That issue is moot inasmuch as Debtors filed voluntary petitions in the USVI and the venue motions and related pleadings have been filed in those cases as well. Furthermore, the Greenlight Entities filed their own motion in the Delaware involuntary cases seeking a determination of the proper venue.
The Greenlight Entities argue that venue should remain in Delaware because Debtors, RTFC, National Rural Utilities Cooperative Corporation, and the Greenlight Entities entered into Terms and Conditions of Settlement among themselves and that document requires that litigation with respect to the settlement be either in the Bankruptcy Court for the District of Delaware or the U.S. District Court for the District of Delaware. Following a hearing on November 7, 2006, this court denied the motion to assume the Terms and Conditions Settlement. The order is at Dkt. No. 99 in the USVI Emerging case, 06-30007, Dkt. No. 98 in the USVI Innovative case, 06-30008, and at Dkt. No. 90 in the USVI Prosser case, 06-30009. We note that the Terms and Conditions were executed after the involuntary cases were filed in Delaware and before the voluntary cases were filed in the USVI. Thus, even if venue concerning the terms of the settlement is in Delaware, that fact does not conclusively determine that venue for all purposes should also be in Delaware.

4

percent[5] of Debtor Emerging, itself a holding company. Emerging's direct, wholly owned, subsidiary is Innovative Communication Corporation ("ICC Corp."). ICC Corp. has various operating subsidiaries. The subsidiaries are cable companies in the USVI which own and operate the cable television system in St. Thomas, St. Croix, and St. John.[6] Vitelcom Cellular, Inc., a nondebtor, operates a cellular wireless company in the USVI. Daily Publishing Co., Inc., another nondebtor, owns and operates the largest daily newspaper in the USVI. These entities (the "ICC Operating Companies"), along with several other operating companies in the USVI and elsewhere, are all subsidiaries of ICC Corp. The ICC Operating Companies (except Daily Publishing) are, or function as, public utilities, the disruption of whose operations will have a major impact on citizens of the USVI and other Caribbean countries. Each of these entities, as well as ICC-LLC and Emerging, guaranteed loans made by the RTFC to ICC-LLC.

ICC-LLC is a Delaware limited liability company with its principal place of business in the USVI. ICC-LLC is wholly owned by Jeffery Prosser.[7] Emerging is also a Delaware corporation with its principal place of business in the USVI. ICC Corp. owns Vitelco and the ICC Operating Companies. ICC Corp., Vitelco and the USVI ICC Operating Companies are formed under USVI law and have their principal places of business in the USVI. Vitelco's annual revenues exceed $65 million and it, with the ICC Operating Companies, is the single

---

[5]ICSC-LLC, a USVI nondebtor limited liability company, owns the other 49 percent.

[6]These companies are St. Croix Cable TV, Inc., and Caribbean Communications Corporation.

[7]There is some question as to whether Prosser's wife is also an owner through the entireties but that is not material to the pending matters.

5

largest employer in the USVI. Vitelco operates under a franchise granted by the USVI government. Ownership and control of Vitelco and its operations are regulated by the USVI Public Service Commission.

The Greenlight Entities' principal place of business is in New York. Their claim against ICC-LLC derives from a judgment for $56,341,843 (plus interest) entered in the Delaware Chancery Court against ICC-LLC, Innovative Communications Corporation ("Old ICC") (a dissolved USVI company)[8] and Prosser. The Greenlight Entities have a separate judgment against Emerging in the amount of $28,548,915 (plus interest) and both judgments[9] arise from the privatization of Emerging.[10] These judgments are now final.[11] The Greenlight Entities domesticated the Delaware judgments in the USVI and therefore submitted to

---

[8] Old ICC's assets and liabilities were transferred to Innovative Communication Corporation ("New ICC"). New ICC assumed Old ICC's liabilities to RTFC. It is this debt that is the basis for the guarantees of Prosser, Emerging, and ICC-LLC to RTFC. New ICC, a nondebtor, is a wholly owned subsidiary of Emerging.

[9] The judgments were entered in Delaware on January 9, 2006, although the opinion upon which they were based was finalized on June 4, 2004.

[10] Numerous appeals and motions for new trial and lawsuits that were pending in state and federal courts when the involuntaries were filed have all been dismissed, withdrawn, or otherwise terminated as the result of certain terms and conditions incident to a settlement agreement the parties had negotiated but which has not been approved by the court. Thus, the only litigation between the parties is in the bankruptcy courts.

[11] Debtors contended that the Greenlight Entities could not be petitioning creditors in Delaware because they sold their claims, characterized by Debtors as contingent, disputed and unliquidated, to RTFC. Debtors allege that RTFC could not file an involuntary against them because it is oversecured and/or its claims were disputed, contingent and unliquidated. RTFC was in litigation over the extent and validity of its alleged lien in the USVI District Court. However, all appeals have been dismissed by Debtors pursuant to a Stipulation of Liability and Allowance of Claims filed with the Bankruptcy Court in Delaware, and through which the parties agreed that RTFC was owed $524,910,065 through various loan agreements with New ICC. Thus, although Debtors disputed the liabilities on the day the involuntaries were filed, they have since conceded liability. All judgments recited in the text are now final.

jurisdiction there. *See, e.g., Covington Industries, Inc. v. Resintex, A.G.*, 629 F.2d 730, 738 (2d Cir. 1980)("by attempting to register the judgment pursuant to 28 U.S.C. §1963 in New York, the plaintiff had waived any question as to the personal jurisdiction of the New York Court").[12]

RTFC is a Virginia based cooperative lender which provides financing to telecommunication companies. It is a controlled entity of the National Rural Utilities Cooperative Corporation ("CFC") which is also RTFC's sole source of funds.[13] Since 1987, RTFC has acted as ICC Corp.'s principal lender.

---

[12]Section 1963 of title 28, U.S.C., provides:

> A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
>
> A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.
>
> The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments.

[13]CFC and RTFC share management, counsel and auditors. CFC, a public company, is a cooperative lender, primarily to public power utilities.

7

The lending relationship between RTFC and ICC Corp., a nondebtor, was the subject of litigation in the USVI District Court (a foreclosure action alleging non-monetary defaults). A company called "New ICC," *see* note 8, *supra*, is the primary borrower of RTFC and it is this debt that is the basis of the guarantees of Prosser, Emerging and ICC-LLC. Two of the actions in the USVI had been commenced by RTFC in Virginia and were transferred to the USVI by order of the Virginia court. Motions to retransfer to Virginia were denied. RTFC sought recusal of the USVI judge to whom the case was transferred. That motion was denied and the Court of Appeals denied RTFC's appeal.

After the Delaware Chancery Court issued its opinion, *see* note 9 and accompanying text, *supra*, RTFC and the Greenlight Entities entered into a joint venture under an intercreditor agreement. Debtors assert that the agreement constitutes a purchase of the judgments by RTFC from the Greenlight Entities and that the purpose of the agreement was to obtain the Greenlight Entities' consent to act as RTFC's "proxy" to file the involuntary petitions. Debtors assert that if RTFC's liens were found to be valid, or the Chancery Court's judgments reversed on appeal, the Greenlight Entities would not have recovered from the sale of ICC-LLC's assets but would recover through RTFC's claims. Debtors also contend that RTFC would benefit as well because on its own it could not have filed the involuntary petitions inasmuch as its judgments were under contest in the USVI.[14] However, the

---

[14]There was, on the date the involuntaries were filed, a Rule 60 motion pending in the Virgin Islands District Court, a motion to stay pending appeal filed in the Delaware Chancery Court, and other appeals in the Supreme Court of Delaware. *See, e.g.,* Case No. 06-10133 (DE), Dkt. No. 6, at 9, n.4.

8

judgments are now final and unappealable. The issue is also moot for venue purposes by virtue of Debtors' own voluntary filings in the USVI.

The Debtors conclude that the filing of the involuntary petitions by the Greenlight Entities is simply a litigation tactic by RTFC to liquidate ICC Corp., Vitelco, and the ICC Operating Companies. RTFC was in litigation in the USVI with ICC Corp., but that case, too, has been terminated. In light of the foregoing, the Debtors seek venue in the USVI where, they assert, there is a logical, legal and regulatory nexus inasmuch as the ICC-LLC's most valuable assets (Emerging, ICC Corp., Vitelco, and the ICC Operating Companies) operate and will be affected. Debtors also assert that the Greenlight Entities are not prejudiced as they have voluntarily submitted to jurisdiction in the USVI by domesticating the judgments there.

Analysis

The parties contend that venue is governed by 28 U.S.C. §1412. However, this court must also look to 28 U.S.C. §1408. Federal Rule of Bankruptcy Procedure 1014 also comes into play. Section 1412 provides:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

This standard is "broad and flexible." *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990).

Title 28 of the United States Code at §1408 provides:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district--

9

>    (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
>    (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Federal Rule of Bankruptcy Procedure 1014(a) provides, in pertinent part:

>    (1) Cases filed in proper district. If a petition is filed in a proper district, . . . the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.
>
>    (2) Cases filed in improper district. If a petition is filed in an improper district, . . . the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

The parties cite only §1412 with the exception of the RTFC which mentions §1408 in its "Preliminary Response."[15] The petitioning creditors argue that by definition (11 U.S.C. §101(2)) Prosser is an "affiliate" of the corporate Debtors and, because venue is proper in Delaware with respect to the corporate Debtors inasmuch as they are incorporated there (28 U.S.C. §1408(1)), it is also proper in Delaware with respect to Prosser. *See* 28 U.S.C. §1408(2). The Bankruptcy Code defines "affiliate" in part as an

---

[15]The Preliminary Response was filed in the Delaware involuntary cases: Case No. 06-10133 (DE) at Dkt. No. 53; Case No. 06-10134 (DE) at Dkt. No. 54; Case No. 06-10135 (DE) at Dkt. No. 34.

10

>(A) entity that directly or indirectly owns, controls, or holds
>with power to vote, 20 percent or more of the outstanding
>voting securities of the debtor . . . .[16]

11 U.S.C. §101(2)(A).

Venue is appropriate in the state of incorporation, 28 U.S.C. §1408(1), so venue is proper in Delaware with respect to the corporate Debtors. However, the corporate Debtors and the other entities related to the corporate Debtors, such as direct and indirect subsidiaries, have operations in the USVI. The operations of these entities and those of their subsidiaries are intimately and inextricably tied to the USVI. In addition, Vitelco and other ICC companies which have their operations in the Virgin Islands are formed under USVI law.

Venue of Prosser's case in Delaware is not so easily determined. In his motion to transfer venue, Delaware Case No. 06-10135, Dkt. No. 6, Prosser states that he is a resident of the USVI, that his business activities and those of the companies he owns and operates are in the USVI and other Caribbean locations, as are the regulatory agencies with which he must be in contact and the employees whose jobs will be affected. The assets subject to the involuntary case filed against him are in the USVI as well. Prosser is the chief executive officer of the many related companies. Thus, even though venue of Prosser's case can lie in Delaware because of his "affiliate" status, we find that the factors to be considered weigh heavily in favor of venue in the USVI. The petitioning creditors argue that although Prosser might not reside or be domiciled in Delaware, he is not a resident or domiciliary of the USVI

---

[16] Section 101(2)(B) also defines "affiliate" as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ."

11

either. Prosser's voluntary petition lists property, including real estate, in the USVI and his address on the voluntary petition is a USVI address. In addressing the concept of "residence," the court, in *In re Handel*, stated:

> Four independent bases are provided for venue under §1408(1): domicile, residence, place of business and location of assets. By definition, domicile can be in only one place. . . . As for venue based on place of business or location of assets, §1408(1) limits venue based on those factors by preceding each with the word "principal." However, no such limitation is employed with respect to the fourth factor "residence." And, it is undeniable that one may have more than one residence simultaneously.

*In re Handel*, 242 B.R. 789, 792 (Bankr.D.Mass. 1999)(citation omitted). On this authority, Prosser has a residence in the USVI. There has not even been an allegation that Prosser has a residence in or any connections with Delaware except his affiliate status. Thus, Prosser's ties to the USVI are significant and his ties to Delaware are not.

In support of the motion to transfer venue, counsel for ICC-LLC cites *Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 (5th Cir. 1979), *cert. denied* 444 U.S. 1045 (1980), with respect to factors used by courts to determine proper venue. The court listed the following factors to help determine convenience to the parties, a relevant factor under Rule 1014:

> (1) proximity of creditors of every kind to the court;
> (2) proximity of the debtor;
> (3) proximity of witnesses who are necessary to the administration of the estate;
> (4) the location of the debtor's assets;
> (5) the economic administration of the estate; and
> (6) the necessity for ancillary administration in the event of liquidation.

12

596 F.2d at 1247.  *Commonwealth Oil Refining* was decided under the Bankruptcy Act of 1898 when the test for determination of venue "applied significantly heightened legal standards than called for under current law." *In re Shorts Auto Parts of Warren, Inc.*, 136 B.R. 30, 38 (Bankr.N.D.N.Y. 1991).  *See also In re Newport Creamery, Inc.*, 265 B.R. 614, 618 (Bankr.M.D.Fla. 2001)(standards for transfer of case when venue is improper and when it is proper are the same - the interest of justice or convenience of the parties).  *Cf. In re Capital Hotel Group, Inc.*, 206 B.R. 190, 193 (Bankr.E.D.Mo. 1997)(court would not retain improperly venued case for the convenience of secured creditors and debtor's counsel or the interest of justice where reorganization was likely to include questions of valuation of estate assets which were almost all located, with debtor's business operations, in a different district; parties to the case were located in at least three different federal judicial districts).

The Court of Appeals for the Third Circuit has identified factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Although the Court of Appeals identified factors a court must weigh when faced with a decision concerning venue in the context of 28 U.S.C. §1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, the district court may transfer any civil action to any other district or division where it might have been brought."  The factors are relevant here.  The court said:

> In ruling on §1404(a) motions, courts have not limited their
> consideration to the three enumerated factors in §1404(a)
> (convenience of parties, convenience of witnesses, or interests
> of justice), and, indeed, commentators have called on the courts
> to "consider all relevant factors to determine whether on
> balance the litigation would more conveniently proceed and the

13

> interests of justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper §3847. While there is no definitive formula or list of the factors to consider, *see* 1A Pt. 2 Moore's ¶0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of §1404(a).
>
> The private interests have included: plaintiff's forum preference as manifested in the original choice, 1A Pt. 2 Moore's ¶ 0.345[5], at 4363; the defendant's preference, 15 Wright, Miller & Cooper §3848, at 385; whether the claim arose elsewhere, *id.* §3848; the convenience of the parties as indicated by their relative physical and financial condition, *id.* §3849, at 408; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, *id.* §3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), *id.* § 3853.
>
> The public interests have included: the enforceability of the judgment, 1A Pt. 2 Moore's ¶0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, *id.*; the relative administrative difficulty in the two fora resulting from court congestion, *id.*, at 4373; 15 Wright, Miller & Cooper §3854; the local interest in deciding local controversies at home, 1A Pt. 2 Moore's ¶0.345[5], at 4374; the public policies of the fora, *see* 15 Wright, Miller & Cooper §3854; and the familiarity of the trial judge with the applicable state law in diversity cases, *id.*

*Jumara v. State Farm Insurance. Co*., 55 F.3d at 879-80.

Here, we are faced with Prosser's residence in the USVI, ICC-LLC and Emerging having been incorporated in Delaware, the Greenlight Entities' principal places of business in New York and RTFC'S base of operations in Virginia. There are very few creditors in any of these three cases. However, the public interest in the USVI as well as other factors point to the USVI. On these facts, coupled with Prosser's significant contacts with the USVI, we find that venue is proper and best satisfies the interests of justice in the USVI. In making the loans

14

to companies that operate in the USVI, RTFC clearly was aware of the nexus of Prosser and his companies to the USVI. The corporate Debtors, ICC-LLC and Emerging, have creditors, regulators, employees, shareholders and operating subsidiaries that are public utilities (or function as such) with customers in the USVI. ICC-LLC's principal place of business, employees and assets are in the USVI. Its principal asset is Emerging stock and Emerging is the parent company of ICC Corp., a USVI corporation that controls, *inter alia*, Vitelco, the USVI telephone company, the ownership, control and operations of which are regulated by the USVI Public Service Commission. The judgments of the petitioning creditors were domesticated there. The public interest in the USVI is great, even though the companies that function as the telephone, newspaper, and other public communication vehicles are not the Debtors but are owned by the Debtor(s). Under these circumstances, the place of incorporation is not the controlling factor and venue in the USVI for the corporate Debtors is strongly indicated.

Moreover, none of the books and records or witnesses are in Delaware. Neither the Delaware nor the USVI courts are so congested that prompt resolution of these cases would be adversely affected and the financial condition of the petitioning creditors and the Debtors is such that venue in either jurisdiction would not prohibit their participation in the case (and, in fact, video conferencing and teleconferencing have been utilized effectively to limit travel to either court location to date). The petitioning creditors prefer Delaware. The voluntary Debtors prefer USVI. The Debtors' assets, public interest, local interest, the convenience to witnesses (most of whom, it is alleged by Debtors, will come from Florida, the USVI, and possibly other Caribbean countries) work together to establish the USVI as the proper venue

of the corporate cases.[17]  Thus, the predominant factors (1, 2, 4 and 5) listed in *Commonwealth Oil Refining, supra*, 596 F.2d at 1247, favor venue in the USVI.

Venue in the USVI for Jeffrey Prosser, an individual, cannot lie in Delaware except insofar as his technical status under the Bankruptcy Code is as an affiliate of the corporate Debtors.  The Greenlight Entities assert that venue with respect to Prosser is appropriate in Delaware not only because of his affiliate status, but because he filed a voluntary case in the USVI thereby conceding that his case is linked to the chapter 11 cases of ICC-LLC and Emerging.  This is not persuasive with respect to the propriety of venue of Prosser's case in Delaware.  Although there apparently is some dispute as to where Prosser's domicile is, it is incontrovertible that he has a residence in the USVI, that neither his domicile nor his residence is in Delaware, and that his interests are inextricably intertwined with those of the corporate Debtors.  The USVI has a paramount interest in what happens to the corporate Debtors, given their direct connection to public utility services in the USVI.  The Greenlight Entities assert that Prosser "and his businesses" have filed an application with the Federal Communications Commission ("FCC") listing Florida addresses for himself and the corporate Debtors.  *See, e.g.,* Second Supplemental Response of Petitioning Creditors to Debtors' Motions to Transfer Venue, Case No. 06-10133, at Dkt. No. 165, at 14-15.  Even if Prosser is

---

[17]Factors 3 and 6, set forth in *Commonwealth Oil Refining, supra,* 596 F.2d at 1247, (the proximity of witnesses necessary to administration of the estate and the necessity for ancillary administration in the event of liquidation) are not implicated at this time. However, we note that in the event that liquidation should occur, the USVI has the paramount interest in the corporate Debtors' assets.

16

a resident[18] or domiciliary of Florida and even if the corporate Debtors have business offices in Florida, those facts alone do not establish that venue is proper in Delaware or improper in the USVI. In his voluntary chapter 11 filed in the USVI Prosser states a personal residence address in St. Croix, USVI.[19] The schedule of real property filed in conjunction with the voluntary petition, Schedule A, lists two parcels in St. Croix, USVI, one in Palm Beach, Florida, and one in Lake Placid, New York. Schedule B, Personal Property, lists bank accounts, household goods, clothing, and other personal items located in Florida and in St. Croix.

There is nothing in the record before this court that indicates that venue is best situated in Delaware with respect to Prosser. Because the three cases are so closely related and because the factors to consider weigh most heavily in favor of the USVI with respect to venue of the corporate Debtors, we conclude all three cases are best venued in the USVI.

An order will be entered transferring the involuntary cases to the USVI where they will be related to the voluntary cases now filed in the USVI. Because the orders for relief have been entered in the voluntary cases in the USVI, it appears that, after the involuntaries are transferred, no further action will be needed in the involuntary cases and they can be closed. However, the Debtors, the U.S. Trustee, and all creditors and interest holders shall have thirty days to file appropriate motions or requests for relief if some further action is needed in the involuntary cases. If no motion is filed within that time, the three involuntary

---

[18]*See In re Handel*, 242 B.R. 789, 792 (Bankr. D.Mass. 1999) (person may have more than one residence simultaneously).

[19]Prosser's case was filed in the St. Croix Division and transferred to the St. Thomas and St. John Division where the corporate voluntaries were filed.

17

cases will be closed.  Further, the §341 first meetings of creditors will now be scheduled in the USVI.

In addition, the Clerks for the Bankruptcy Court for the District of Delaware and for the District Court for the District of the Virgin Islands, Bankruptcy Division, shall cause a copy of this Memorandum Opinion and accompanying Order to be distributed to all counsel of record, all creditors, and all parties in interest.

An appropriate order will be entered.

DATE: December 14, 2006

_____
Judith K. Fitzgerald
United States Bankruptcy Judge

18